IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
DEC - 3 2012
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA )
)
)
v. )                1:11cr231 (LMB)
)                1:12cv1168 (LMB)
)
MARION SHAWN ANDERSON, )
)
Defendant. )

### MEMORANDUM OPINION

Marion Shawn Anderson ("Anderson"), a federal prisoner, has
filed a pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set
Aside, or Correct Sentence by a Person in Federal Custody
("Motion to Vacate") [Dkt. No. 96]. In his motion, Anderson
claims that his counsel provided ineffective assistance in ten
different respects, which he captions as "Points of Error," and
seeks an evidentiary hearing on these claims. See Mem. of Law
in Supp. of Movant's Pro Se Mot. to Vacate, Set Aside or Correct
a Fed. Sentence or Conviction Pursuant to 28 U.S.C. § 2255 [Dkt.
No. 97] ("Movant's Mem.") at 6, 21; Am. Mem. of Law in Supp. of
Movant's Pro Se Mot. to Vacate, Set Aside or Correct a Federal
Sentence or Conviction Pursuant to 28 U.S.C. § 2255 [Dkt. No.
100] ("Movant's Am. Mem.") at 2. For the reasons discussed
below the Motion to Vacate will be summarily dismissed as to all
"Points of Error" except for the First Point of Error, in which
Anderson alleges that his attorney "fail[ed] to file timely

Notice of Appeal after sentencing even though unequivocally instructed to do so." Movant's Mem. at 6.[1] As to only that issue, the government will be required to file a response, which must include an affidavit from Robert Lee Jenkins, Jr., the attorney at issue in that claim.

## I. BACKGROUND

### A. Factual Background[2]

On February 14, 2011, a Virginia State Trooper pulled over an individual who later became a confidential source (the "C.S.") for a routine traffic violation. Statement of Facts [Dkt. No. 61] ¶ 3. The C.S. consented to a search of his rental car, in which the Trooper found approximately 1.75 kilograms of cocaine in the trunk. Id. The C.S. stated during his interview[3] with the police that he had purchased the cocaine from "Shawn," later identified as Anderson, and that the full purchase price

---

[1] Under Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts:

> The judge who receives notice of the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.

[2] The factual background provided in this section is based on the Statement of Facts [Dkt. No. 61], which Anderson signed and affirmed as accurate under penalty of perjury. Plea Hr'g Tr. [Dkt. No. 93], at 25:7-27:24.

[3] Before his interview, the C.S. was informed of his Miranda rights and waived them. Id. ¶ 4.

was $59,000.00.  Id. ¶ 4.  The C.S. had paid $54,300.00 in cash up front and would pay the remaining $4,700.00 later.  Id.  He explained that he had given the money to "Tay," a black female associate later identified as Atavia Mack ("Mack"), who acted on behalf of Anderson in delivering the cocaine and accepting the cash in exchange.  Id.  Every two weeks, the C.S. traveled to Baltimore to purchase at least one-half of a kilogram of cocaine from Anderson, then returned to Suffolk, Virginia, where he sold it to his customers.  Id. ¶ 5.  The amount of cocaine per transaction had been steadily increasing, and over the course of a year he had purchased approximately fifteen kilograms of cocaine from Anderson.  Id.

The C.S. also gave agents the telephone numbers that Anderson used when they discussed cocaine transactions.  Id. ¶ 7.  He told agents that Anderson gave him an account number and other account information for a Bank of America account through calls and text messages using those telephone numbers. Id.  The C.S. would then make deposits for outstanding balances on earlier cocaine transactions into that Bank of America account.  Id.  After his interview, the C.S. placed a recorded phone call to Anderson, in which they discussed the quality of the drugs the C.S. had been purchasing, and made arrangements for a future cocaine transaction.  Id. ¶ 6.

On February 17, 2011, Anderson instructed the C.S., through recorded phone calls and text messages, to deposit the remaining $4,700.00 into the same Bank of America account.  Id. ¶ 8. Undercover agents deposited $4,700.00 in DEA funds into the account.  Id.  The C.S. confirmed the deposit through a recorded telephone call to Anderson.  Id.

Anderson sent a text message to the C.S. on March 1, 2011, stating that he had 1.5 kilograms of cocaine left to sell the C.S. for $51,000.00.  Id. ¶ 10.  The C.S. told Anderson that he would purchase all of it, and that he would be in the Baltimore area to pick it up on March 3, 2011.  Id.  During the morning of March 3, 2011, the C.S. and Anderson exchanged text messages to arrange the sale, deciding to meet at the Spring Hill Suites Hotel in Hanover, Maryland.  Id. ¶¶ 11.  Later, Anderson called the C.S. to inform him that Mack was on her way.  Id.  Law enforcement saw her deliver the 1.5 kilograms of cocaine.  Id. Video surveillance showed Mack and the C.S. inspecting the cocaine in the hotel room.  Id.  Mack was then arrested.  Id.

During Mack's interview[4] by the police, she stated that Anderson paid her $200.00 for each delivery she made to the C.S., and provided her with a car to use.  Id. ¶ 12.  She further stated that she had made six earlier deliveries to the

---

[4] Before she was interviewed, Mack was informed of her Miranda rights and waived them.  Id. ¶ 12.

4

C.S. for Anderson, which summed to approximately six kilograms of cocaine.  Id.

Law enforcement officers then went to Anderson's home in Baltimore, Maryland, and saw Anderson sitting in the driver's seat of a black Cadillac SUV outside his home.  Id. ¶ 13.  The officers arrested Anderson, and found $30,020.00 in cash in the SUV during a search incident to arrest.  Id.  After being informed of his Miranda rights, Anderson declined to make a statement, but consented to the search of his home, stating that cash and a gun were inside closets in the house.  Id. ¶ 14. Inside the house, the officers found a loaded shotgun and $101,940.00 in cash.  Id.

## B. Procedural Background

Anderson was charged with conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1).  See Criminal Compl. [Dkt. No. 1].  At his initial appearance on March 4, 2011, Anderson indicated that he had retained counsel, John Katz, Esq.  See Dkt. No. 7.  At two later appearances, however, Anderson indicated that he and his family had not been able to finalize arrangements with counsel, although they were trying to do so.  See Dkt. Nos. 11, 16.  Todd A. Pilot entered a Notice of Appearance on behalf of Anderson on March 14, 2011, and on April 18, 2011, the pro hac vice Application of Ivan Jules Bates to represent Anderson with Todd

A. Pilot acting as local counsel was granted. See Dkt. Nos. 23, 32.

On May 12, 2011, Anderson was indicted for one count of conspiracy to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Indictment [Dkt. No. 39] at 1-4. The indictment included a Forfeiture Notice under 21 U.S.C. § 853, which covered the cash seized from the SUV and his residence, the Cadillac SUV, a Lexus sedan, and "a sum of money equal to approximately $442,000.00 in United States currency, representing the proceeds obtained as a result of the offense charged." Id. at 5.

On May 20, 2011, Anderson moved to relieve Todd A. Pilot and Ivan J. Bates of responsibility for his defense and to substitute another retained attorney, Anton J. Stelly, as counsel. Dkt. No. 44. The Court granted the motion on May 31, 2011. Dkt. No. 46. Acting on behalf of Anderson, Stelly filed a Motion to Suppress Evidence [Dkt. No. 45]. Although the hearing on that motion was scheduled for July 29, 2011, the hearing was cancelled after the government filed a Criminal Information and Notice Pursuant to 21 U.S.C. § 851 on July 26, 2011, and Anderson pleaded guilty to the conspiracy charge pursuant to a written plea agreement on July 27, 2011. Dkt. Nos. 51, 58, and 60.

During the Rule 11 plea colloquy, Anderson stated under an affirmation to tell the truth that he was thirty-eight years old, had completed his GED, and had no problem reading, writing, understanding, or speaking English. Plea Hr'g Tr. at 3:4-10. He further acknowledged that he had taken no medication and was not under the influence of alcohol or drugs. Id. at 3:23-4:4. He agreed that he had had "several days, if not weeks" to review the written plea agreement on his own, and that he had also reviewed it with Stelly, who had answered all of his questions to his satisfaction. Id. at 5:3-14. Anderson also affirmed that he was "fully satisfied with the way [Stelly] ha[d] been working with [him] on this case," that he understood the plea agreement and voluntarily agreed to it, and that no one had put "any force or pressure" on him to plead guilty. Id. at 21:7-9, 5:25-6:12, 24:22-24.

After the plea hearing, but before the scheduled sentencing hearing, Anderson sent the Court a letter complaining about the quality of representation he had been receiving from Stelly. Dkt. No. 73. His complaints were primarily that Stelly was taking pain medication for his back problems and that as a result, Stelly was "lost," would forget what Anderson told him, and had neglected to perform certain duties. Id. at 1. Specifically, Anderson stated that he had instructed Stelly to file some pretrial motions that were never filed, and that

Anderson still had "major questions about the indictment, Grand Jury Minutes, Criminal Complaint, Criminal Cover Sheet, and more" that were never answered.[5] Id. The Court treated the letter as a Motion for Court-Appointed Counsel, which it denied. Dkt. No. 74.

Anderson sent the Court another letter complaining about Stelly. Dkt. No. 76. This letter reiterated his earlier complaint about Stelly taking pain medication and added complaints about how Stelly handled the motion to suppress evidence and his purported lack of response to the Presentence Investigation Report ("PSIR") and failure to file a Sentencing Memorandum.[6] See id. In response to Anderson's second letter, the Court held a hearing to address Anderson's complaints about counsel. Dkt. No. 75. At that hearing, the Court relieved Stelly of any further obligations, finding that the attorney-client relationship had become too adversarial, and appointed Robert Lee Jenkins, Jr., Esq., to represent Anderson. Dkt. No. 79.

---

[5] This allegation about having major questions about aspects of the case contradicted Anderson's acknowledgment during the plea colloquy that he had asked counsel all the questions he had about the case and that counsel had answered all his questions to his satisfaction. Plea Hr'g Tr. at 5:9-14.

[6] In fact, on October 3, 2011, the same day that this second letter was received and filed, Stelly filed several objections to the Presentence Investigation Report. See Dkt. No. 77.

Jenkins served as defense counsel during the sentencing hearing on November 18, 2011, when the Court sentenced Anderson to the mandatory minimum of 240 months in the custody of the Bureau of Prisons, followed by ten years of supervised release. Id. at 7:10-19. No notice of appeal was filed.

## II.    DISCUSSION

On October 18, 2012, Anderson timely filed this Motion to Vacate, in which he argues that his counsel was ineffective for (1) failing to file a timely Notice of Appeal after being instructed to do so, (2) failing to challenge the government's alleged breach of the plea agreement, (3) failing to challenge his "coerced" plea, (4) failing to pursue a "promised" Rule 35 motion, (5) failing to challenge the drug quantity used either for the offense of conviction or for calculating the Guidelines, (6) failing to adequately challenge the leadership sentencing enhancement, (7) failing to succeed in challenging the gun enhancement, (8) failing to challenge the forfeiture order, and (9) failing to challenge the § 851 criminal information. See Movant's Mem. at 6. On November 23, 2012, just within the one-year time period for filing a § 2255 motion, Anderson submitted an Amended Memorandum, which added a tenth point of error in which he claimed that his counsel was ineffective "for failing to challenge [sic] validity of the affidavit used by law enforcement to secure search warrant." Movant's Am. Mem. at 2.

9

In the Amended Memorandum, he also appears to argue that he is actually innocent. See id. at 2-3.

## C. **Standard of Review**

A motion under 28 U.S.C. § 2255 provides for collateral attack on a conviction or sentence when the conviction or sentence was imposed in violation of the United States Constitution or laws, when the court lacked jurisdiction to impose the conviction or sentence, when the sentence was in excess of the maximum authorized by law, or when the conviction or sentence is otherwise subject to a collateral attack. See 28 U.S.C. § 2255(a). To prevail on a § 2255 motion, a movant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. See Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

Relief under § 2255 is designed to correct for fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which failing to grant relief would be "inconsistent with the rudimentary demands of fair procedure or constitute[] a complete miscarriage of justice." United States v. Vonn, 535 U.S. 55, 64 (2002) (quoting United States v. Timmreck, 441 U.S. 780, 783 (1979)) (internal quotation marks omitted). A motion pursuant to § 2255 "may not do service for an appeal," and claims that have been waived are therefore procedurally defaulted unless the movant

can show cause and actual prejudice. <u>United States v. Frady</u>, 456 U.S. 152, 165-67 (1982). An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel. <u>See United States v. Gastiaburo</u>, 16 F.3d 582, 590 (4th Cir. 1994).

Under § 2255(b), a movant is to be granted an evidentiary hearing on his motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Summary dismissal of § 2255 allegations is "warranted only if a habeas petitioner's allegations when viewed against the record of the plea hearing are palpably incredible or patently frivolous or false." <u>United States v. White</u>, 366 F.3d 291, 297 (4th Cir. 2004) (quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 76 (1977)) (internal quotation marks omitted). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner," that judge may take into account her "recollection of the events at issue" when deciding whether to summarily dismiss a § 2255 motion. <u>See Blackledge</u>, 431 U.S. at 74 n.4.

## D. **Analysis**

To establish ineffective assistance of counsel, Anderson must show both that (1) "counsel's performance was deficient" and that (2) "the deficient performance prejudiced the defense."

11

Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient performance occurs when "counsel's representation fell below an objective standard of reasonableness." Id. at 688. To establish prejudice, Anderson must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A showing that "the errors had some conceivable effect on the outcome of the proceeding" is not enough; a reasonable probability requires that the errors are "sufficient to undermine confidence in the outcome." Id. at 693, 694. In short, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Moreover, when a movant who pleaded guilty brings a claim of ineffective assistance of counsel, he is bound by statements he made under oath affirming his satisfaction with his counsel absent "clear and convincing evidence to the contrary." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992) (citing Blackledge, 431 U.S. at 74-75).

1. Failure to File Notice of Appeal (Point of Error 1)

When a defendant "unequivocally instructs an attorney to file a timely notice of appeal, prejudice is presumed because it results in the 'forfeiture' of the appellate proceeding." United States v. Poindexter, 492 F.3d 263, 268 (4th Cir. 2007) (quoting Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000)).

Accordingly, defense counsel must file a notice of appeal when the defendant instructs him to do so, even when the defendant has knowingly and voluntarily waived his right to appeal as Anderson did in this case. Id. at 269. At Anderson's sentencing hearing, after the Court reminded Anderson that he had "waived [his] right to appeal both [his] conviction and any sentence within the statutory maximum," Sentencing Hr'g Tr. at 9:10-12, the Court confirmed with defense counsel that he understood he was obligated to file even a meritless appeal:

> THE COURT: . . . And, Mr. Jenkins, you'll need to discuss that with your client. If he wants to file an appeal, as meritless as it may be, you need to as his attorney file it for him, all right?
>
> MR. JENKINS: Yes, Your Honor.

Id. at 9:18-21.

Anderson alleges in his First Point of Error that he informed Jenkins of his desire to appeal "[a]t the conclusion of sentencing on November 18, 2011," but that Jenkins never responded to that request or to Anderson's several letters, calls, and emails. See Movant's Mem. at 7, Ex. 1 ¶¶ 17-18.

### 2. Failing to Challenge Breach of Plea Agreement and Failing to Pursue Rule 35 Motion (Points of Error 2 and 4)

Anderson's Second and Fourth Points of Error both relate to the government's failure to move for a sentence reduction based on his cooperation. Specifically, in his second claim, Anderson argues that his counsel was ineffective when "it became clear

13

that there would be no §5K1.1 Motion or Rule 35(b) Motion from the government," and counsel failed to challenge the government's refusal to file such a motion as a breach of the plea agreement. Id. at 9. In his fourth claim, he faults counsel for not pursuing a Rule 35(b) motion.

Neither claim has any merit. Although Anderson avers that "there can be no contest that [he] was promised a reduction for substantial assistance," id. at 12, the record conclusively contradicts that claim. The written plea agreement, which Anderson had ample time to review on his own and with his attorney, see Plea Hr'g Tr. at 4:18-5:13, provided that:

> The parties agree that the United States reserves the right to seek any departure from the applicable sentencing guidelines, pursuant to Section 5K1.1 of the Sentencing Guidelines and Policy Statements, or any reduction of sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure, if, in its sole discretion, the United States determines that such a departure or reduction of sentence is appropriate.

Plea Agreement [Dkt. No. 60] ¶ 15 (emphasis added). Under Fourth Circuit precedent, if a plea agreement gives the government "sole discretion" to decide whether a downward departure is appropriate, it "give[s] rise to no enforceable promise" because it "explicitly reserv[es] discretion rather than promising anything." United States v. Wallace, 22 F.3d 84, 87 (4th Cir. 1994).

Additionally, the Court explained § 5K1.1 and Rule 35(b) motions in detail during the Plea Hearing, see Plea Hr'g Tr. at

14

17:21-19:5, and explicitly told Anderson that the government had
not promised to make either motion:

> THE COURT: What you need to be absolutely clear
> about . . . is that the government has not promised you
> or agreed that they're going to file either of those two
> motions even if you do cooperate. So even if you've
> talked to the agents, even if you've testified in the
> grand jury, if, for example, they find you haven't told
> them everything or they find that what you've given them
> is just, you know, what they already know and they can't
> use it at all and they don't file one of these motions,
> that does not violate the plea agreement and it would
> not give you a basis to withdraw your guilty plea.
>
> Do you understand that?
>
> THE DEFENDANT: Yes.

Id. at 19:6-17. Should Anderson seek to argue that the
"promise" of a Rule 35(b) motion was made outside the written
plea agreement, that argument is contradicted by his
acknowledgment, made under the penalty of perjury during the
Rule 11 plea colloquy, that there were no other agreements or
understandings between him and any law enforcement official or
prosecutor regarding the case. See id. at 7:9-15.

Accordingly, there is no basis for Anderson's claim that
the government breached the plea agreement when it did not move
for a downward departure or sentence reduction, as the plea
agreement included no promise that it would do so. Because no
breach occurred, Anderson could not have received
constitutionally ineffective assistance when his lawyer did not
argue that the government had breached the plea agreement.

15

Further, it was not ineffective assistance for defense counsel not to try to force the government to file a Rule 35(b) motion because whether to file one was a decision resting in the sole discretion of the United States.

Anderson heavily relies on Wade v. United States, 504 U.S. 181 (1992), to argue that his attorney could have forced the issue. See Movant's Mem. at 12-13. This reliance is for naught, however, because Wade actually refutes his argument. Wade held that the government's decision not to move for a downward departure is subject to judicial review only if it was based on unconstitutional motives, such that "a defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion, say, because of the defendant's race or religion." 504 U.S. at 186. The Wade Court went on to observe that "a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing" and that "although a showing of assistance is a necessary condition for relief, it is not a sufficient one." Id. at 186-87. Because Anderson has "never alleged, much less claimed to have evidence tending to show, that the Government refused to file a motion for suspect reasons such as his race or his religion," id. at 186, but has simply argued that his assistance entitled him to a downward departure, this claim also facially lacks merit.

16

### 3. Failure to Challenge 21 U.S.C. § 851 Information (Point of Error 9)

Although Anderson concedes that he was previously convicted of a drug offense that qualifies for an enhanced sentence under 21 U.S.C. § 841(b)(1)(A)(vii), he argues in his Ninth Point of Error that the government assured him that no § 851 information would be filed and that Stelly misled him and misadvised him about the issue "in order to gain his consent to a plea agreement and to continue with his cooperation." Movant's Mem. at 19. This claim is conclusively rebutted not only by the written plea agreement and Anderson's statements during the Rule 11 plea colloquy but also by an exhibit that Anderson attached to his memorandum.

The written plea agreement specifically provided that the government agreed to "file only one criminal information with the Court, pursuant to Title 21, United States Code, Section 851, stating one of the defendant's prior convictions for a felony drug offense." Plea Agreement ¶ 10. By having only one § 851 information filed when Anderson's significant criminal record included three felony drug convictions, each of which could have been filed as an § 851 information, he received a significant benefit from that part of the plea agreement.[7] If

---

[7] Anderson's three prior convictions for felony drug offenses were:

17

more than one § 851 information had been filed, he would have faced a mandatory minimum sentence of life in prison.  See 21 U.S.C. § 841(b)(1)(viii) ("If any person commits a violation of this subparagraph . . . of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . . ."); see also Plea Hr'g Tr. at 13:3–14:3, 16:6–10.

Additionally, during the Rule 11 plea colloquy, the Court and the attorneys told Anderson several times that a single § 851 information had been filed against him, and he indicated that he understood.  For example, the Court explained the impact that the § 851 information had on his mandatory minimum sentence:

---

- A 1998 conviction in the United States District Court for the District of Maryland of Conspiracy to Distribute Cocaine.

  Sentence: 77 months of incarceration and 5 years of supervised release.
- A 1992 conviction in the Circuit Court for Baltimore City, Maryland, of Possession with Intent to Distribute Cocaine.

  Sentence: 16 years of incarceration with all but 8 years suspended, and 4 years of probation upon release.
- A 1991 conviction in the Circuit Court for Baltimore City, Maryland, of Possession with Intent to Distribute Cocaine.

  Sentence: 5 years of incarceration with 4 years, 11 months, and 29 days suspended, and 2 years of probation.

Presentence Investigation Report ("PSIR") [Dkt. No. 83] ¶¶ 44, 45, 48, at 13–15, 17.

THE COURT: . . . Now, because the government has filed an 851 information against you, which indicates that you have at least one felony drug conviction on your record . . . that doubled the mandatory minimum sentence that you're looking at in this case, and so, in fact, you're now -- the sentence that you're looking at is a mandatory minimum term of 20 years in prison up to the possibility of life in prison.

Do you understand that?

THE DEFENDANT: Yes.

Plea Hr'g Tr. at 7:21-8:5. The Court and the attorneys discussed that Anderson had additional felony convictions that qualified under § 851, but that one of the benefits Anderson received from the plea agreement was the government's promise to file only one:

THE COURT: Now, in exchange for your guilty plea today, the first thing the government has done is, No. 1, in paragraph 10, has agreed that it will file only one criminal information under 851 concerning your record. We've already discussed that.

And had they filed all of the information[s], then is it correct, Ms. Eriksen, that that would have been a mandatory life sentence?

MS. ERIKSEN: Yes, Your Honor.

THE COURT: All right. So they have given you that benefit . . . .

Id. at 16:6-16; see also id. at 13:3-14:3 (discussion by defense counsel, the government, and the Court of the possibility of a mandatory minimum life sentence).

Finally, Exhibit 5 attached to Anderson's memorandum demonstrates that before he entered his plea, Anderson was aware

19

that a § 851 information would be filed against him.  On July 18, 2011, more than a week before the § 851 information was filed and the plea hearing was held, his fiancée, Latosha Whitener, wrote an e-mail to Stelly on behalf of Anderson, stating that they "need[ed] clarification on the filing of one criminal conviction under 851 . . . will that enhance his criminal category over Level 32?"  Movant's Mem., Ex. 5 at 1. This question clearly indicates that Anderson and Ms. Whitener were aware that the government would be filing a criminal information under § 851.  Stelly's response makes clear that he had informed Anderson of the consequences of being convicted if the government filed more than one § 851 information:

> No.  In fact, by not mentioning the 3 prior convictions (2 state -- that may not count because they are so long ago -- and the MD federal conviction), the AUSA[ ]is trying to help him out.  As I've tried to explain to [Anderson] if he is convicted with more than one prior, it[']s MANDATORY MINIMUM life in prison.

Id.  Although this response is perhaps not a model of clarity, the response certainly establishes that Stelly had communicated with Anderson about the impact multiple § 851 informations would have on his sentence.

Accordingly, the motion, its exhibits, and the record conclusively establish the absence of merit to Anderson's claim that he had no idea that the § 851 information was filed.

## 4. Failures at Sentencing Hearing (Points of Error 5, 6, and 7)

Anderson's claims labeled the Fifth, Sixth, and Seventh Points of Error concern alleged ineffectiveness of counsel at the sentencing hearing due to failures to challenge certain Guidelines calculations. Specifically, Anderson alleges that Jenkins, his counsel at the sentencing hearing, was ineffective for failing to make or failing to win arguments about the drug quantity used to calculate the Guidelines range,[8] about the leadership enhancement, and about the gun enhancement. See Movant's Mem. at 6. Regardless of whether counsel was deficient in failing to make or in making but losing these arguments, these claims are meritless because Anderson cannot show prejudice. The Court imposed the minimum mandatory sentence available under the statute; accordingly, arguments about the Guideline range, whether won or lost by defense counsel, would not have entitled Anderson to a lower sentence. See Sentencing Hr'g Tr. at 4:1-5, 6:3 (statements from both defense counsel and the prosecution that the arguments over the Guidelines

---

[8] Anderson also seems to suggest that counsel's ineffectiveness resulted in his conviction under a subsection of the statute that did not accurately represent the drug quantity at issue. See Movant's Mem. at 13-14. These self-serving post-conviction statements are conclusively rebutted by his signature on the Statement of Facts [Dkt. No. 61] and his corresponding statements during the plea colloquy admitting to the facts he now denies. Compare Movant's Mem. at 13-14, with Plea Hr'g Tr. at 25:3-27:19; Statement of Facts ¶¶ 7, 9-11.

enhancements were "academic"). These claims therefore have no merit.

With respect to the gun enhancement, Anderson argues that he was prejudiced because its imposition affected his classification by the Bureau of Prisons. Whether that classification constitutes prejudice under Strickland need not be decided because in fact Jenkins argued at some length during the sentencing hearing against the application of the gun enhancement. See id. at 3:25-5:3. The Court disagreed and found that there was "more than sufficient evidence in the report and in the uncontested facts to support" the enhancement. See id. at 6:5-10. Anderson's only evidence of deficient performance is that defense counsel lost the argument, which is insufficient to establish that counsel was constitutionally ineffective. See United States v. Tunstall, 17 F.3d 245, 247 (8th Cir. 1994) (finding no ineffective assistance of counsel when "counsel did all that could be done by bringing the alleged errors to the district court's attention").

### 5. Failure to Challenge Coerced Plea (Point of Error 3)

In his Third Point of Error, Anderson argues that "his plea was the result of outright coercion from both the government and his then attorney Stelly." Movant's Mem. at 9. He cites as evidence: (1) that the government told Stelly that the plea deal was off the table if Anderson went through with the suppression

hearing; (2) that AUSA Eriksen told him he was looking at a potential sentence of 97-121 months and that she had seen defendants get as much as a 65% time cut for cooperation; (3) that he was told there would be no gun or leadership enhancements; and (4) that he was assured that no § 851 criminal informations would be filed and therefore no one ever explained or discussed a twenty-year mandatory minimum sentence with him. See Movant's Mem. at 9-10.

Anderson acknowledges that his Rule 11 colloquy stands as an obstacle to his claim that he was coerced into pleading guilty. See id. at 9; Plea Hr'g Tr. at 24:22-24 ("THE COURT: Has anyone put any force or pressure on you to plead guilty today? THE DEFENDANT: No."). In an attempt to overcome that obstacle, he cites Machibroda v. United States, 368 U.S. 487 (1962), and Fontaine v. United States, 411 U.S. 213, 214 (1973) (per curiam), as support for his argument that the Court cannot adopt a "per se rule excluding all possibility that Anderson's representations at the time of his guilty plea was accepted [sic], were not the product of such factors such as misunderstanding, duress, or misrepresentation by others so as to make his guilty plea a constitutionally inadequate basis for the sentence imposed and resulting imprisonment." Movant's Mem. at 9 (emphasis in original).

Machibroda and Fontaine are inapposite.  Although these cases found that the defendants had alleged sufficient acts of coercion to entitle them to evidentiary hearings on the issue and did reject such a per se rule, see Blackledge v. Allison, 431 U.S. 63, 75 (1977), neither case "in the least reduce[d] the force of the original plea hearing," id. at 73.  In Blackledge, the United States Supreme Court clarified that:

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Id. at 73-74.  Similarly, under Fourth Circuit precedent, a movant's statements at a plea proceeding "that facially demonstrate the validity of his plea are conclusive unless he presents reasons why this should not be so." Via v. Superintendent, Powhatan Corr. Ctr., 643 F.2d 167, 171 (4th Cir. 1981); see also Nesbitt v. United States, 773 F. Supp. 795, 799 (E.D. Va. 1991) ("Sworn responses in a plea proceeding are conclusive unless the movant can demonstrate compelling reasons for questioning their truth, such as ineffective assistance of counsel.").

In particular, when a plea bargain is "favorable" to the movant, such that "accepting it was a reasonable and prudent

decision," those facts constitute evidence of the "voluntary and intelligent character" of the plea. Fields, 956 F.2d at 1299. As discussed above, Anderson received a significant benefit from the plea agreement because he avoided the imposition of a mandatory life sentence. Although Anderson has alleged that the ineffective assistance of his counsel led to his entering a coerced plea, his allegations are not sufficient "to surmount the formidable barrier created by his in-court representations." Nesbitt, 773 F. Supp. at 799.

Moreover, a plea agreement is not coerced simply because the government told defense counsel that the offer would be withdrawn if the defense continued with the suppression hearing. It is inherent in the nature of plea bargaining that the government's interest is to convince the defendant and defense counsel to waive certain constitutional rights. Cf. Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978) ("[A]cceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process."). Although the choices imposed during the bargaining process "clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'--and permissible-- 'attribute of any legitimate system which tolerates and

encourages the negotiation of pleas.'" Id. at 364 (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 31 (1973)). Accordingly, because Anderson remained "free to accept or reject the prosecution's offer," id. at 363, conditioning the plea on the withdrawal of Anderson's motion to suppress does not make the plea agreement coercive.

Moreover, any allegations about what the AUSA told him he would receive at sentencing cannot support a motion to vacate because both the written plea agreement and the Court made clear that any statements from either defense counsel or the prosecution would not bind the Court when it came to sentencing:

> THE COURT: I want to make sure you understand that no matter what is written in paragraph 5 of the plea agreement and no matter what Mr. Stelly may have told you he believes your sentence will be or what he expects your guidelines to be or, for that matter, if the prosecutor, Ms. Eriksen, or anybody else, any agent or any friend or anybody has told you, oh, you're probably going to get X, Y, or Z punishment, none of those discussions in any respect bind or limit the probation officer who prepares the presentence report or this Court when it goes to sentence you.
>
> Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And so if at the sentencing hearing the Court uses guidelines that are different from what you might be expecting or hoping for or the Court sentences you to a sentence that is different from what you're expecting or hoping for based upon your discussions with counsel or anybody else, that will not give you a basis to withdraw your guilty plea, because the Court is not bound by any of those discussions.

26

Do you understand that?

THE DEFENDANT: Yes.

Plea Hr'g Tr. at 14:18-15:13; see also Plea Agreement ¶ 5(c).

Both the written plea agreement and the Court explained that defense counsel and the government remained free to argue for any sentencing reductions or enhancements that could be applied to the base offense level of 32:

> THE COURT: All right. And paragraph 5(c) provides that you understand that those stipulations in 5(a) and 5(b) are not in any respect binding either on the Probation Office or the Court and that there's no agreement between you-all as to any other guideline factors. That means, for example, that you are free to argue that you should get a, a minimal role reduction. The government can argue that you should get a leadership role. In other words, there are no other guideline factors that either of you have agreed to.
>
> Is that your understanding of the plea agreement?
>
> THE DEFENDANT: Yes.

Plea Hr'g Tr. at 11:16-12:1; see also Plea Agreement ¶ 5(c). Anderson therefore entered his guilty plea fully informed of the fact that any representations made to him regarding various sentencing enhancements would not be binding on the Court.[9]

Lastly, despite the language in the written plea agreement and his acknowledgments during the plea colloquy, Anderson contends that he was assured that "there would be no § 851 Notice[s] filed" and that he "did not know [an § 851

---

[9] Moreover, given that the Court imposed the statutory mandatory minimum, the arguments over Guidelines enhancements are moot.

information] had been filed and [his] attorney did not inform
[him]." Movant's Mem. at 10, Ex. 1 ¶ 12. As discussed above,
his argument is completely incredible given the record in this
case.

Accordingly, the exhibits to the motion and the records of
the case "conclusively show that the prisoner is entitled to no
relief" on his claim that his plea was coerced. 28 U.S.C.
§ 2255(b).

### 6. Failure to Challenge Forfeiture (Point of Error 8)

In his Eighth Point of Error, Anderson alleges that Stelly
was ineffective for "specifically telling Anderson not to
challenge [the forfeiture] in any way" when in fact, according
to Anderson, the forfeited property "was never proceeds from
illegal drug activities or any other illegal activities."
Movant's Mem. at 19, 17. This claim is also conclusively
refuted by the record. During the plea hearing, Anderson
affirmed that he understood he was waiving "any and all rights
or interest [he] might have" in the forfeited properties. Plea
Hr'g Tr. at 20:2-22. He also read and signed the Consent Order
of Forfeiture [Dkt. No. 62] during the plea hearing. Plea Hr'g
Tr. at 29:12-30:7.

Although Anderson contends that the forfeiture issue "was a
contributory factor for Anderson firing Stelly," Movant's Mem.
at 17, in neither of his letters complaining about Stelly's

representation did Anderson mention dissatisfaction with Stelly's handling of the forfeiture as an issue. See Dkt. Nos. 73, 76. Moreover, although Exhibits 3, 4, and 5 to his memorandum appear to be correspondence between Stelly and Anderson or his fiancée, the forfeiture issue is not mentioned in any of them. See Movant's Mem. Exs. 3-5.

Finally, Anderson's argument that the $131,960.00 in cash that was forfeited did not derive from any illegal activity, see Movant's Mem. at 18, is not credible. That cash amount was made up of $30,020.00 in cash seized from his SUV and $101,940.00 in cash seized from his house. See Consent Order of Forfeiture [Dkt. No. 62] ¶ 1(d)-(e). The PSIR, however, states that Anderson indicated that for the two years before his arrest he had legitimate income averaging $50,000.00 per year. PSIR [Dkt. No. 83] ¶ 90, at 24. Keeping over $100,000.00 in one's house and over $30,000.00 in one's car is not expected behavior for a person earning $50,000.00 per year. On the other hand, it is roughly consistent with the amounts that the C.S. told law enforcement officers he paid Anderson in exchange for cocaine.

Accordingly, the Court finds this claim incredible on its face and will summarily dismiss it.

### 7. Failure to Challenge Search Warrant and Claim of Actual Innocence (Point of Error 10)

In his tenth Point of Error, submitted in an Amended Memorandum, Anderson alleges that his counsel was ineffective

29

for "failing to challenge [sic] validity of the affidavit used by law enforcement to secure search warrant." Movant's Am. Mem. at 2. This claim is meritless for numerous reasons. As the record shows, no search warrant was issued in this case. See Docket Listings of 1:11-cr-00231-LMB-1, 1:11-mj-00176-TRJ (E.D. Va. filed Mar. 3, 2011). The only affidavit filed was one signed by Special Agent Edmund J. Kelly in support of the criminal complaint filed after Anderson was arrested. See Aff. in Supp. of Criminal Compl. [Dkt. No. 3]. The search of Anderson's vehicle was conducted incident to his arrest and Anderson consented to the search of his house. Id. ¶¶ 21-22, at 8; see also Statement of Facts [Dkt. No. 61] ¶¶ 13-14, at 5.

Moreover, Stelly did file a motion to suppress the evidence seized from Anderson's SUV when he was arrested, the weapon and cash seized from his residence, and all statements he made to the police. See Mot. to Suppress Evidence [Dkt. No. 45]. Although the record shows that agents did not have any search or arrest warrants, it also clearly establishes that there was probable cause to arrest Anderson and that he gave consent to the search of his residence. See Aff. in Supp. of Criminal Compl. [Dkt. No. 3]; Factual Background, section I.A., supra.

In this new claim, Anderson also appears to be arguing that he is actually innocent. See Movant's Am. Mem. at 2 ("Anderson submits that none of this occurred. There is no surveillance

video or audio placing him at the shopping center on March 3, 20[1]1; there is no recorded conversation between Anderson or CW1 or Mack. . . . [I]t was all fabricated to inculpate Anderson in events which never occurred."). Any claim of actual innocence is contradicted by the written Statement of Facts, which Anderson signed as part of his plea agreement, see Plea Hr'g Tr. at 25:3-9, and his acknowledging the truth of those facts during his plea colloquy, id. at 25:10-27:24. Moreover, when interviewed by United States Probation Officer Kelly M. Smihal, who prepared the Presentence Investigation Report, Anderson made no claim of innocence, did not dispute any of the facts in the record, and admitted that he was involved in a conspiracy to distribute cocaine. See PSIR ¶ 40, at 12.

Lastly, in neither of the two letters to the Court that Anderson wrote between the plea and sentencing hearings did he raise any suggestion of actual innocence. Dkt. Nos. 73, 76. He also made no claim of actual innocence during the sentencing hearing when he was offered the opportunity to allocute, see Sentencing Tr. at 6:12-15, and he did not raise it as an issue in his original Memorandum supporting this Motion to Vacate. See Movant's Mem. 1-23.

For all these reasons, the Court finds no merit in Anderson's contention that Stelly was ineffective for not

challenging the searches or in his claim that he is actually innocent of the conspiracy to which he pleaded guilty.

### III. CONCLUSION

For the reasons stated above, all of Anderson's Points of Error, except for the First Point of Error, will be dismissed by an appropriate Order to be issued with this Memorandum Opinion. As to that one issue, the United States will be directed to provide a response including an affidavit from Jenkins regarding Anderson's allegation that no Notice of Appeal was filed despite Anderson's explicit instruction to counsel to file one.

Entered this 3rd day of December, 2012.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge